UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

EILEEN GLASSMAN, an individual,

      Plaintiff,

vs.

CP EMPLOYMENT SERVICES COMPANY, INC.,
a Delaware Corporation, d/b/a CARING PEOPLE,

      Defendant.

_____/

## **COMPLAINT**

1.      Plaintiff, EILEEN GLASSMAN (hereinafter referred to as "Plaintiff" and "GLASSMAN"), was an employee of Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., a Delaware Corporation d/b/a CARING PEOPLE (referred to as "CARING PEOPLE" and "Defendant"), and Plaintiff brings this action against Defendant for violations of the Age Discrimination in Employment Act of 1967 ("ADEA") as amended, 29 U.S.C. §621 *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA"), the Florida Civil Rights Act, F.S. §760.01 *et seq.*, and the Florida Whistleblower Act, F.S. §448.102.

2.      GLASSMAN is an individual residing in Palm Beach County, Florida, within the jurisdiction of this Court.

3.      At all times material to this Complaint, CARING PEOPLE has owned and operated a home healthcare business with a corporate office located at 4450 S. Tiffany Drive, West Palm Beach, Florida 33407 in Palm Beach County, within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331, §1332, §1337 and §1367, 29 U.S.C. §621 *et seq.*, and 42 U.S.C. §12101 *et seq.*

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Palm Beach County, Florida, within the jurisdiction of the United States District Court for the Southern District of Florida, West Palm Beach Division.

6.      In March 2019, CARING PEOPLE hired GLASSMAN as a Client Service Manager based upon an annual base salary of $50,000.00 per year.

7.      At all times material to this action, GLASSMAN was an individual with one or more chronic medical (physiological) conditions, namely Type 2 Diabetes, a metabolic disease which affects, *inter alia*, how Plaintiff's body uses blood sugar (glucose), the production of the hormone insulin, Plaintiff's pancreas and liver, and Plaintiff's hemic system.

8.      At all times material to this action between March 2019 and August 2020, GLASSMAN suffered from a "physical impairment" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of GLASSMAN's Type 2 Diabetes and resulting medical issues, including but not limited to, Plaintiff suffering from one or more physiological disorders or conditions affecting one or more of GLASSMAN's major bodily functions, including but not limited to Plaintiff's pancreas and liver, and Plaintiff's body systems including but not necessarily limited to GLASSMAN's hemic system.

9.      Between March 2019 and August 2020, GLASSMAN successfully carried out her essential job duties as a Client Service Manager for CARING PEOPLE, with customers of the company regularly lauding GLASSMAN's exemplary job performance.

10.     In or around May 2019, GLASSMAN reported to Emily Hilton, CARING PEOPLE's Regional Director of Operations, GLASSMAN's good faith belief that CARING PEOPLE was engaged in fraudulent insurance-billing practices regarding the recording and performance of at least three (3) Activities of Daily Living (ADL) by the company's caregivers because of, *inter alia*:  (a) the manner in which ADLs were being recorded at the express direction of Esther Snyder in Finance/Insurance; and (b) caregivers not actually performing all of the ADLs for which CARING PEOPLE was submitting insurance claims, but CARING PEOPLE failed to take remedial action to address these unlawful practices.

11.     In or around August 2019, GLASSMAN reported to Emily Hilton, CARING PEOPLE's Regional Director of Operations, and Jaime Cittadino, CARING PEOPLE's Director of Operations, GLASSMAN's good faith belief that CARING PEOPLE was hiring and employing caregivers in violation of the legal requirements of Florida's Agency for Healthcare Administration (AHCA) regulations for caregivers' licensing, qualifications, and maintenance of caregiver file records, but CARING PEOPLE failed to take remedial action to address these unlawful practices.

12.     In or around November 2019, GLASSMAN again discussed with Emily Hilton, CARING PEOPLE's Regional Director of Operations, GLASSMAN's good faith belief that CARING PEOPLE was continuing to engage in fraudulent insurance-billing practices regarding the recording and performance of at least three (3) Activities of Daily Living (ADL) by the company's caregivers because of, *inter alia*:  (a) the manner in which ADLs were being recorded at the express direction of Esther Snyder in Finance/Insurance; and (b) caregivers not actually performing all of the ADLs for which CARING PEOPLE was submitting insurance claims, but CARING PEOPLE still failed to take remedial action to address these unlawful practices.

13.     In or around January 2020, GLASSMAN discussed with Emily Hilton, CARING PEOPLE's Regional Director of Operations, GLASSMAN's good faith belief that CARING PEOPLE was still engaging in fraudulent insurance-billing practices regarding the recording and performance of at least three (3) Activities of Daily Living (ADL) by the company's caregivers because of, *inter alia*:  (a) the manner in which ADLs were being recorded at the express direction of Esther Snyder in Finance/Insurance; and (b) caregivers not actually performing all of the ADLs for which CARING PEOPLE was submitting insurance claims, in response to which Hilton told GLASSMAN:  "Don't bring it up anymore, its not your problem."

14.     In or around February 2020, GLASSMAN again communicated to Jaime Cittadino, CARING PEOPLE's Director of Operations, that Defendant was continuing to hire and employ caregivers in violation of the legal requirements of Florida's Agency for Healthcare Administration (AHCA) regulations for caregivers' licensing, qualifications, and maintenance of caregiver file records, including, *inter alia*, some caregivers being assigned to jobs by CARING PEOPLE despite caregivers' credentials not being updated as required by AHCA, some caregivers being felons in contravention of AHCA's licensing and credentialing requirements, and many caregivers' files-records being incomplete or missing altogether, but CARING PEOPLE still failed to take remedial action to address these unlawful practices.

15.     In or around February 2020, CARING PEOPLE closed its offices because of the COVID-19 health pandemic and all of Defendant's employees started working remotely.

16.     Between approximately February 2020 and June 2020, GLASSMAN satisfactorily performed her duties for CARING PEOPLE as a Client Service Manager while Plaintiff worked remotely from home on a full-time basis for Defendant for a period of approximately two (2) to three (3) months.

17.     In June 2020, after CARING PEOPLE began reopening its offices, GLASSMAN returned to work in person in Defendant's West Palm Beach office but Plaintiff learned (i) that CARING PEOPLE *was not* following COVID-19 safety protocols in the West Palm Beach office; and (ii) Defendant was sending caregivers into customers' homes without appropriate Personal Protective Equipment (PPE) after employees had been exposed to COVID-19.

18.     Significantly, GLASSMAN reported COVID-19 safety complaints in June 2020 to Jaime Cittadino, CARING PEOPLE's Director of Operations, because GLASSMAN believed CARING PEOPLE was not complying with its obligation to provide Plaintiff and other employees with a safe work environment as mandated by the Occupational Safety and Health Act (OSHA), *see, e.g.*, 29 U.S.C. §654, OSHA's General Duty Clause, as a result of CARING PEOPLE failing to (i) observe COVID-19 safety protocols; and (ii) provide PPE to Defendant's employees.

19.     After GLASSMAN verbally requested in June 2020 that CARING PEOPLE provide Plaintiff with an accommodation for Plaintiff's Type 2 Diabetes Cittadino to help GLASSMAN avoid working around other employees due to Plaintiff's high-risk exposure to COVID-19, Cittadino initially told GLASSMAN in June 2020 that CARING PEOPLE was going to make arrangements for GLASSMAN to work in her own office within CARING PEOPLE's West Palm Beach office.

20.     However, while CARING PEOPLE ultimately did not give GLASSMAN her own workspace or office in June 2020, Plaintiff nonetheless continued to go into CARING PEOPLE's West Palm Beach office to work two (2) days per week in person despite CARING PEOPLE not following COVID-19 safety protocols to provide Plaintiff with a safe work environment.

21.     In addition in June 2020, GLASSMAN—who was then age Sixty-Three (63) and suffers from Type 2 Diabetes—submitted a request for an accommodation to CARING PEOPLE

for Plaintiff's disability/handicap within the protections of the ADA-FCRA based upon GLASSMAN's treating physician, Dr. Ronald Laracuente's, medical recommendations when GLASSMAN specifically requested that CARING PEOPLE accommodate her disability/handicap by allowing Plaintiff to work from home each day during the COVID-19 global pandemic.

22.     However, in approximately July 2020, CARING PEOPLE rejected GLASSMAN's ADA-FCRA accommodation request in violation of the ADA-FCRA and Cittadino told GLASSMAN that Plaintiff needed to return to work inside Defendant's West Palm Beach office every day because, according to Cittadino: "Its time to rip the band aid off," in response to which GLASSMAN expressly objected to Cittadino.

23.     After GLASSMAN notified Cittadino in July 2020 that Plaintiff had learned that she'd been in the presence of an individual who had tested positive for COVID-19, as part of which GLASSMAN was told by her doctor to quarantine for fourteen (14) days and take a COVID-19 test, on August 4, 2020, GLASSMAN received a message from CARING PEOPLE requesting a meeting with Cittadino at a Publix supermarket parking lot in Boynton Beach with the PPE that GLASSMAN had at home for inventory.

24.     When GLASSMAN met in person with Cittadino in August 2020, GLASSMAN was advised by Cittadino that CARING PEOPLE was purportedly doing a "restructuring" and GLASSMAN's employment was therefore being terminated, as part of which Cittadino—who was in her early Thirties (30s)—told GLASSMAN "how lucky she was" because GLASSMAN could "just retire," despite GLASSMAN continuing to be fully capable of performing her essential duties as a Client Service Manager.

25.     The reason proffered by CARING PEOPLE in August 2020 for terminating GLASSMAN's employment was false and known to be false by Defendant at the time of Plaintiff's

termination and instead was a pretext for unlawful disparate treatment, discrimination, and retaliation against GLASSMAN in violation of the ADEA, ADA, FCRA, and FWA.

26.     In August 2020, CARING PEOPLE treated employees who were substantially younger than GLASSMAN and/or who were less than Forty (40) years old and had less or similar qualifications as GLASSMAN more favorably than GLASSMAN including but not necessarily limited to Weslyn Bastien, who based upon information and belief was an individual in her Thirties (30s) who replaced GLASSMAN as a Client Service Manager after CARING PEOPLE terminated GLASSMAN's employment.

## EXHAUSTION OF ADMINISTRATVIE REMEDIES

27.     On November 12, 2020, GLASSMAN filed a Charge of Discrimination against CARING PEOPLE with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR), EEOC Charge No. 15M-2021-00018, alleging that she had been subjected to age and disability/handicap discrimination as well as retaliation in violation of the ADEA, ADAAA, and FCRA.  A copy of GLASSMAN's Charge of Discrimination is attached hereto as Exhibit A.

28.     On or around April 14, 2021, the EEOC issued a Dismissal and Notice of Suit Rights to GLASSMAN in connection with Charge No. 15M-2021-00018.  See Exhibit B, and on April 21, 2021, the EEOC provided GLASSMAN's Notice of Rights to the undersigned counsel for GLASSMAN.

29.     As of May 26, 2021, more than One Hundred and Eighty (180) days have passed since the filing of GLASSMAN's Charge of Discrimination on November 12, 2020 and the FCHR did not issue any determination concerning GLASSMAN's Charge.  As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine

whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," GLASSMAN has exhausted all administrative remedies under Florida as well as Federal law.

30.     GLASSMAN's Complaint in this action is being filed with the Court on May 26, 2021 within Thirty-Five (35) days of GLASSMAN's receipt on April 21, 2021 of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 15M-2021-00018.

31.     All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for age discrimination violation of the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. § 621, *et seq.*

32.     At all times material to this action, GLASSMAN was an employee of CARING PEOPLE within the meaning of 29 U.S.C. §630(f), 29 U.S.C. §623 and 29 U.S.C. §631.

33.     At all times material to this action, GLASSMAN was an individual protected by the ADEA, 29 U.S.C. §631(a), in that GLASSMAN was at least Forty (40) years of age.

34.     At all times material to this action, CARING PEOPLE has been an employer and/or was GLASSMAN's employer within the meaning of 29 U.S.C. §§623 and 630(b).

35.     Between approximately June 2020 and August 2020, CARING PEOPLE knowingly and willfully discriminated against GLASSMAN because of her age, Sixty-Three (63), in violation of 29 U.S.C. §623(a)(1).

36.     Moreover, in August 2020, CARING PEOPLE treated employees who were substantially younger than GLASSMAN and/or who were less than Forty (40) years old and had less or similar qualifications as GLASSMAN more favorably than GLASSMAN including but not necessarily limited to Weslyn Bastien, who based upon information and belief was an individual in her Thirties (30s) who replaced GLASSMAN as a Client Service Manager, in violation of 29 U.S.C. §623(a)(1).

37.     Despite the fact that GLASSMAN satisfactorily performed her essential duties as a Client Service Manager for CARING PEOPLE between March 2019 and August 2020, Defendant unlawfully terminated GLASSMAN in August 2020 because of GLASSMAN's age, in violation of 29 U.S.C. §623(a)(1).

38.     GLASSMAN's age, Sixty-Three (63), was a motivating factor in CARING PEOPLE's decision to terminate GLASSMAN's employment in August 2020, in violation of 29 U.S.C. §623(a)(1).

39.     CARING PEOPLE terminated GLASSMAN's employment in August 2020 because of GLASSMAN's age and for a false and pretextual reason that was discriminatory because of GLASSMAN's age, in violation of 29 U.S.C. §623(a)(1).

40.     As a direct and proximate result of CARING PEOPLE's unlawful age discrimination against GLASSMAN in violation of the ADEA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, lost wages, back pay, lost bonuses and/or

commissions, benefits such as health and pension benefits, front pay, and other damages in amounts to be established at trial.

41.     CARING PEOPLE's actions in violation of the ADEA were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, GLASSMAN's federally protected rights under the ADEA, as a result of which GLASSMAN is entitled, pursuant to 29 U.S.C. §216(b) and the ADEA, to liquidated damages from CARING PEOPLE equal to back pay in an amount to be established at trial.

42.     Pursuant to 29 U.S.C. §216(b) and the ADEA, GLASSMAN is entitled to recover her reasonable attorneys' fees and costs from CARING PEOPLE.

WHEREFORE, Plaintiff, EILEEN GLASSMAN demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for lost wages, back pay, lost bonuses and/or commissions, benefits such as health and pension benefits, front pay, liquidated damages, equitable relief including but not limited to interest, attorney's fees, costs and such other and further relief as the Honorable Court deems proper.

**COUNT II**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for disparate treatment and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

43.     The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

44.     At all times material to this action, GLASSMAN was an "employee" of CARING PEOPLE within the meaning of the ADAAA, 42 U.S.C. §12111(4).

45.     At all times material to this action, CARING PEOPLE was an "employer" of GLASSMAN within the meaning of the ADAAA, 42 U.S.C. §12111(5), because Defendant was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

46.     At all times material to this action, GLASSMAN suffered from Type 2 Diabetes which affected, *inter alia*, Plaintiff's pancreas, liver, and hemic systems during GLASSMAN's employment with CARING PEOPLE between March 2019 and August 2020.

47.     At all times material to this action, GLASSMAN suffered from one or more "physical impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of Type 2 Diabetes, a physiological disorder or condition which affected (a) GLASSMAN's pancreas, liver, and hemic system; and (b) one or more of GLASSMAN's major bodily functions, including but not necessarily limited to the functioning of GLASSMAN's pancreas, liver, hemic system, and the production of glucose and insulin.

48.     At all times material to this action, GLASSMAN was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i)(ii), including but not necessarily limited to the operation of a major bodily function including the functions of GLASSMAN's pancreas, liver, hemic system, and the production of glucose and insulin.

49.     At all times material to this action, GLASSMAN was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. §12102(1), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by CARING PEOPLE as a person with such impairments.

50.     At all times material to this action, GLASSMAN had to endure substantial limitations as a result of Plaintiff's Type 2 Diabetes and related medical condition(s) within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because GLASSMAN's medical condition(s) substantially limited Plaintiff's ability to perform one or more major life activities— including but not necessarily limited to the functioning of GLASSMAN's pancreas, liver, hemic system, and the production of glucose and insulin—as compared to most people in the general population.

51.     At all times material to this action, GLASSMAN was "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because GLASSMAN's Type 2 Diabetes and related medical conditions constitute one or more actual physical impairments that substantially limit one or more of GLASSMAN's major life activities.

52.     In addition, at all times material to this action, GLASSMAN was also "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because GLASSMAN was regarded by CARING PEOPLE as having a physical impairment that substantially limited one or more of her major life activities as a result of GLASSMAN's Type 2 Diabetes and related medical condition(s).

53.     At all times material to this action, GLASSMAN was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to

satisfactorily perform the essential functions of her job as a Client Service Manager for CARING PEOPLE between March 2019 and August 2020 with or without reasonable accommodation by Defendant.

54.    At all times material to this action, GLASSMAN was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because GLASSMAN possessed the requisite skill and experience to carry out her essential duties as a Client Service Manager for CARING PEOPLE between March 2019 and August 2020, and GLASSMAN likewise was capable of performing the essential functions of her job between even between June 2020 and August 2020 despite GLASSMAN's disability, with or without reasonable accommodation(s) by CARING PEOPLE.

55.    Further, GLASSMAN was also qualified for her job with CARING PEOPLE as a Client Service Manager within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of GLASSMAN's Type 2 Diabetes and chronic medical condition because CARING PEOPLE could have and should have provided GLASSMAN with reasonable accommodation(s) including but not limited to granting Plaintiff's accommodation request to work from home during the COVID-19 health pandemic.

56.    Between approximately June 2020 and August 2020, CARING PEOPLE subjected GLASSMAN to disparate treatment, harassment, and discrimination in violation of 42 U.S.C. §12112 which was motivated by GLASSMAN's disability and Defendant discriminated against GLASSMAN because of her disability in violation of 42 U.S.C. §12112, including but not limited to: (a) in approximately July 2020, CARING PEOPLE denying GLASSMAN's request for a reasonable accommodation for Plaintiff's disability/handicap; and (b) CARING PEOPLE

terminating GLASSMAN's employment in August 2020 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability.

57.     CARING PEOPLE terminated GLASSMAN's employment in August 2020 because of GLASSMAN's actual and/or perceived disability, in violation of 42 U.S.C. §12112(a).

58.     The reason proffered by CARING PEOPLE in August 2020 for terminating GLASSMAN's employment was false and a pretext for discrimination against GLASSMAN because of her disability in violation of 42 U.S.C. §12112(a).

59.     CARING PEOPLE knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against GLASSMAN because of her disability so as to discourage, dissuade and/or otherwise dishearten GLASSMAN.

60.     GLASSMAN's actual and/or perceived disability was a motivating factor in CARING PEOPLE's decision to terminate GLASSMAN's employment in August 2020, in violation of 42 U.S.C. §12112.

61.     CARING PEOPLE's violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to GLASSMAN's rights guaranteed under the laws of the United States.

62.     GLASSMAN has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CARING PEOPLE's violations of the ADA and ADAAA.

63.     GLASSMAN has retained the undersigned counsel to represent her in this action and pursuant to 42 U.S.C. §12205, GLASSMAN is entitled to recover her reasonable attorneys' fees and costs from CARING PEOPLE.

WHEREFORE, Plaintiff, EILEEN GLASSMAN, demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for back pay,

employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

<u>COUNT III</u>
<u>RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations of Paragraphs 1 through 31 as if fully set forth herein and further states that this is an action against CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

64.    The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

65.    Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

66.    At all times material to this action, GLASSMAN was an "employee" of CARING PEOPLE within the meaning of the ADAAA, 42 U.S.C. §12111(4).

67.    At all times material to this action, CARING PEOPLE was an "employer" of GLASSMAN within the meaning of the ADAAA, 42 U.S.C. §12111(5), because Defendant was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

68.    At all times material to this action, GLASSMAN was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered one or more physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by CARING PEOPLE as a person with such impairments.

69.    GLASSMAN was at all times material to this action a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as a Client Service Manager for CARING PEOPLE between March 2019 and August 2020 with or without reasonable accommodation.

70.    GLASSMAN engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately June 2020 and August 2020 by, *inter alia*, GLASSMAN exercising or attempting to exercise or enjoy her rights under the ADA, including but not limited to: (a) GLASSMAN verbally requesting an accommodation for her disability; (b) GLASSMAN submitting a written request in June 2020 to CARING PEOPLE for an accommodation for her disability; and (c) GLASSMAN communicating to Jamie Cittadino in approximately July 2020 Plaintiff's objections to CARING PEOPLE's denial of Plaintiff's requested accommodation to work from home on a full-time basis during the COVID-19 pandemic.

71.     CARING PEOPLE subjected GLASSMAN to adverse employment actions including but not necessarily limited to: (a) denying Plaintiff's accommodation request in approximately July 2020; (b) terminating Plaintiff's employment in August 2020 based upon discriminatory and/or pretextual grounds because of Plaintiff's disability and Plaintiff's good faith objections to Defendant's management about discrimination because of an actual or perceived disability, all because GLASSMAN engaged in statutorily protected activity under the ADA and ADAAA.

72.     CARING PEOPLE's retaliatory actions against GLASSMAN constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADA/ADAAA, 42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

73.     CARING PEOPLE's termination of GLASSMAN's employment in August 2020 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff's accommodation requests for her disability and Plaintiff's good faith objections to and complaints about CARING PEOPLE's disparate treatment and disability discrimination, in violation of the ADA.

74.     The fact that GLASSMAN engaged in activity protected by the ADA was a motivating factor in CARING PEOPLE's termination of Plaintiff's employment in August 2020, in violation of 42 U.S.C. §12203.

75.     The reason proffered by CARING PEOPLE in August 2020 for terminating GLASSMAN's employment was a pretext for unlawful retaliation against GLASSMAN in violation of 42 U.S.C. §12203.

75.     As a direct and proximate result of CARING PEOPLE's unlawful retaliation against GLASSMAN in violation of the ADA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

76.     CARING PEOPLE's actions have caused GLASSMAN to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

77.     CARING PEOPLE's actions were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, GLASSMAN's federally protected rights under the ADA, as a result of which Plaintiff is entitled to punitive damages from Defendant.

78.     Pursuant to 42 U.S.C. §12205, GLASSMAN is entitled to recover her reasonable attorneys' fees and costs from CARING PEOPLE as a result of Defendant's violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, EILEEN GLASSMAN demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT IV
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT,
## F.S. §760.10  - DISCRIMINATION BASED ON AGE AND HANDICAP

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations set forth in paragraphs 1 through 31 above and further states that this is an action against CP EMPLOYMENT

SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for age and handicap discrimination in violation of the Florida Civil Rights Act, F.S. §760.10 *et seq.*

79.     Florida Statutes §760.10(1)(a) provides that: "It is unlawful employment practice for an employer:   To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, **age**, **handicap**, or marital status." Id. (emphasis added).

80.     At all times material to this action, GLASSMAN was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

81.     At all times material to this action, GLASSMAN was an employee of CARING PEOPLE within the meaning of F.S. §760.10(1)(a).

82.     At all times material to this action, CARING PEOPLE was an "employer" of GLASSMAN within the meaning of the FCRA, F.S. §760.02(7), because Defendant was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

83.     When CARING PEOPLE terminated GLASSMAN's employment in August 2020, Plaintiff was Sixty-Three (63) years old.

84.     CARING PEOPLE knowingly and willfully discriminated against GLASSMAN in August 2020 because of Plaintiff's age, in violation of F.S. §760.10(1).

85.     Moreover, in August 2020, CARING PEOPLE treated employees who were substantially younger than GLASSMAN and/or who were less than Forty (40) years old and had less or similar qualifications as GLASSMAN more favorably than GLASSMAN including but not necessarily limited to Weslyn Bastien, who based upon information and belief was an individual

in her Thirties (30s) who replaced GLASSMAN as a Client Service Manager, in violation of F.S. §760.10(1).

86.     Furthermore, despite the facts that GLASSMAN satisfactorily performed her essential duties as a Client Service Manager for CARING PEOPLE and that GLASMAN was qualified in August 2020, and continues today to be qualified, to work as a Client Service Manager for CARING PEOPLE, Defendant unlawfully terminated GLASSMAN in August 2020 because of Plaintiff's age and/or handicap, in violation of F.S. §760.10(1).

87.     At all times material to this action, GLASSMAN suffered from a chronic and/or permanent medical condition as a result of Type 2 Diabetes and related medical condition(s), which condition(s) constitute an actual or perceived "handicap" within the meaning of the FCRA, as GLASSMAN's condition was chronic and involved physical problems including but not necessarily limited to the functioning of GLASSMAN's pancreas, liver, hemic system, and the production of glucose and insulin.

88.     At all times material to this action, GLASSMAN was a qualified individual with a handicap within the meaning of the FCRA because GLASSMAN  possessed the requisite skill and experience to carry out her duties as a Client Service Manager for CARING PEOPLE and GLASSMAN likewise was capable of performing the essential functions of her job despite Plaintiff's handicap, with or without reasonable accommodation(s) by CARING PEOPLE.

89.     Further, at all times material to this action GLASSMAN was also qualified for her job as a Client Service Manager for CARING PEOPLE within the meaning of the FCRA even in the face of the impact of GLASSMAN's handicap because CARING PEOPLE could and should have provided GLASSMAN with reasonable accommodation(s) in allowing Plaintiff to work remotely from home on a full-time basis during the COVID-19 pandemic, with Defendant

having—at times—provided such benefits of employment to other similarly situated employees without handicaps.

90.     Between approximately June 2020 and August 2020, CARING PEOPLE subjected GLASSMAN  to disparate treatment and discrimination which was motivated by and was because of GLASSMAN's handicap, in violation of F.S. §760.10(1)(a), by *inter alia*: (a) denying GLASSMAN's requests for a reasonable accommodation for Plaintiff's handicap; and (b) terminating GLASSMAN's employment in August 2020 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived handicap.

91.     CARING PEOPLE knowingly and willfully engaged in conduct prohibited by the Florida Civil Rights Act against GLASSMAN because of Plaintiff's handicap so as to discourage, dissuade and/or otherwise dishearten GLASSMAN.

92.     When CARING PEOPLE terminated GLASSMAN's employment in June 2020, a motivating factor behind Plaintiff's termination was GLASSMAN's age and/or handicap, in violation of F.S. §760.10(1)(a) & (b).

93.     The reason proffered by CARING PEOPLE in August 2020 for terminating GLASSMAN's employment was false and a pretext for discrimination against GLASSMAN because of her age and/or handicap in violation of F.S. §760.10(1).

94.     CARING PEOPLE's violations of F.S. §760.10 were intentional and were done with malice and reckless disregard for GLASSMAN's rights as guaranteed under the laws of the State of Florida, such that GLASSMAN is entitled to punitive damages from CARING PEOPLE pursuant to F.S. §760.11(5).

95.     Pursuant to F.S. §760.11(5), GLASSMAN is entitled to recover her reasonable attorneys' fees and costs from CARING PEOPLE as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, EILEEN GLASSMAN demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT VI
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations set forth in paragraphs 1 through 31 above and further states that this is an action against CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

96.     Pursuant to the Florida Civil Rights Act (FCRA), F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

97.     At all times material to this action, GLASSMAN was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

98.     At all times material to this action, GLASSMAN was an employee of CARING PEOPLE within the meaning of F.S. §760.10(1)(a).

99.     At all times material to this action, CARING PEOPLE was an "employer" of GLASSMAN within the meaning of the FCRA, F.S. §760.02(7), because Defendant was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

100.    GLASSMAN engaged in statutorily protected activity within the meaning of the Florida Civil Rights Act between approximately June 2020 and August 2020 by, *inter alia*:  (a) GLASSMAN verbally requesting an accommodation from CARING PEOPLE for her handicap; (b) GLASSMAN submitting a written request in June 2020 to CARING PEOPLE for an accommodation for her handicap; and (c) GLASSMAN communicating to Jamie Cittadino in approximately July 2020 Plaintiff's objections to CARING PEOPLE's denial of Plaintiff's requested accommodation to work from home on a full-time basis during the COVID-19 pandemic.

101.    CARING PEOPLE subjected GLASSMAN to adverse employment action and retaliation because of Plaintiff's protected activity under the Florida Civil Rights Act, including, *inter alia*, terminating GLASSMAN's employment in August 2020 based upon false and/or pretextual grounds because of Plaintiff's good faith objection to Jaime Cittadino to CARING PEOPLE's discrimination against Plaintiff because of an actual or perceived handicap, all in violation of F.S. §760.10(7).

102.    CARING PEOPLE's termination of GLASSMAN's employment in August 2020 was unlawful retaliation in violation of the Florida Civil Rights Act because of Plaintiff's request for accommodations and Plaintiff's good faith objection to CARING PEOPLE's disparate treatment and discrimination, in violation of F.S. §760.10(7).

103.    CARING PEOPLE's unlawful retaliation against GLASSMAN was sufficiently severe and pervasive to alter the terms, conditions, and privileges of GLASSMAN's employment with CARING PEOPLE culminating with Defendant's termination of GLASSMAN's employment in August 2020, in violation of F.S. §760.10(7).

104.    The fact that GLASSMAN engaged in activity protected by the FCRA was a motivating factor in CARING PEOPLE's termination of Plaintiff's employment in August 2020, in violation of F.S. §760.10(7).

105.    The reason proffered by CARING PEOPLE in August 2020 for terminating GLASSMAN's employment was a pretext for unlawful retaliation against GLASSMAN in violation of F.S. §760.10(7).

106.    CARING PEOPLE's violations of §760.10 were intentional and were done with malice and reckless disregard for GLASSMAN's rights as guaranteed under the laws of the State of Florida, such that GLASSMAN is entitled to punitive damages from CARING PEOPLE pursuant to F.S. §760.11(5).

107.    GLASSMAN has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CARING PEOPLE's violations of F.S. §760.10(7).

108.    Pursuant to F.S. §760.11(5), GLASSMAN is entitled to recover her reasonable attorneys' fees and costs from CARING PEOPLE as a result of CARING PEOPLE's violations of the FCRA.

WHEREFORE, Plaintiff, EILEEN GLASSMAN demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable

relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT VII**
**VIOLATIONS OF FLORIDA'S WHISTLEBLOWER ACT, F.S. §448.102**

Plaintiff, EILEEN GLASSMAN, reasserts and reaffirms the allegations set forth in paragraphs 1 through 31 above and further states that this is an action against CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for violations of Florida Statutes §448.101 *et seq.*, Florida's Whistleblower Act.

109.    At all times material to this action between approximately March 2019 and August 2020, GLASSMAN was an employee of CARING PEOPLE within the meaning of F.S. §448.101(2).

110.    At all times material to this action, CARING PEOPLE constituted an employer of GLASSMAN within the meaning of F.S. §448.101(3) because Defendant has been engaged in an industry affecting commerce and had Ten (10) or more employees for each working day in each of Twenty (20) or more weeks in the current or preceding calendar year.

111.    Under Florida's Whistleblower Act, F.S. §448.102, an employer may not take any retaliatory personnel action against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

**(3)  Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.**

112.    GLASSMAN engaged in protected activity within the meaning of Florida's Whistleblower Act, F.S. §448.102(3), in or around May 2019, November 2019, and January 2020 when GLASSMAN reported to and discussed with Emily Hilton, CARING PEOPLE's Regional Director of Operations, Plaintiff's good faith belief that CARING PEOPLE was engaged in fraudulent insurance-billing practices regarding the recording and performance of at least three (3) Activities of Daily Living (ADL) by the company's caregivers because of, *inter alia*:  (a) the manner in which ADLs were being recorded at the express direction of Esther Snyder in Finance/Insurance; and (b) caregivers not actually performing all of the ADLs for which CARING PEOPLE was submitting insurance claims.

113.    Similarly, GLASSMAN also engaged in protected activity within the meaning of Florida's Whistleblower Act, F.S. §448.102(3), in or around August 2019 and February 2020 when GLASSMAN reported to and discussed with Emily Hilton, CARING PEOPLE's Regional Director of Operations, and Jaime Cittadino, CARING PEOPLE's Director of Operations, GLASSMAN's good faith belief that CARING PEOPLE was unlawfully hiring and employing caregivers in violation of the legal requirements of Florida's Agency for Healthcare Administration (AHCA) regulations for caregivers' licensing, qualifications, and maintenance of caregiver file records, including, *inter alia*, some caregivers being assigned to jobs by CARING PEOPLE despite caregivers' credentials not being updated as required by AHCA, some caregivers being felons in contravention of AHCA's licensing and credentialing requirements, and many caregivers' files-records being incomplete or missing altogether.

114.    Likewise, when GLASSMAN reported in June 2020 COVID-19 safety complaints to Jaime Cittadino, CARING PEOPLE's Director of Operations, about what GLASSMAN believed were CARING PEOPLE's failures to provide office and field employees with safe work environments during the COVID-19 health pandemic, GLASSMAN engaged in protected activity within the meaning of Florida's Whistleblower Act, F.S. §448.102(3).

115.    CARING PEOPLE subjected GLASSMAN to "retaliatory personnel action" within the meaning of the Florida Whistleblower Act, F.S. §448.101(5), because of Plaintiff's opposition and complaints between approximately May 2019 and June 2020 to Emily Hilton and Jaime Cittadino including but not necessarily limited to CARING PEOPLE terminating GLASSMAN's employment in August 2020, in violation of F.S. §448.102(3).

116.    CARING PEOPLE's termination of GLASSMAN's employment in August 2020 was undertaken in intentional retaliation against GLASSMAN because Plaintiff engaged in protected activity by complaining about and objecting to CARING PEOPLE's (a) fraudulent billing and insurance practices; (b) illegal caregiver hiring and employment practices in violation of AHCA requirements; and (c) failure to provide employees with a safe work environment during the COVID-19 health pandemic in violation of OSHA's requirements, in violation of F.S. §448.102(3).

117.    GLASSMAN in good faith believed that CARING PEOPLE's (a) fraudulent billing and insurance practices; (b) illegal caregiver hiring and employment practices in violation of AHCA requirements; and (c) failure to provide employees with a safe work environment during the COVID-19 health pandemic in violation of OSHA's requirements were violations of one or more "laws, rules, or regulations" within the meaning of the Florida Whistleblower Act, F.S. §448.101(4).

118.    One or more "laws, rules, or regulations" within the meaning of the Florida Whistleblower Act, F.S. §448.101(4), which were applicable to Defendants and pertained to CARING PEOPLE's business between approximately May 2019 and August 2020 which GLASSMAN reasonably and in good faith believed Defendant was violating when Plaintiff complained to CARING PEOPLE's management includes but was not necessarily limited to: (a) Florida state and/or Federal law insurance laws prohibiting fraudulent billing; (b) Florida's Agency for Healthcare Administration (AHCA) regulations; and (c) 29 U.S.C. §654, the General Duty Clause of the Occupational Safety and Health Act (OSHA).

119.    The fact that GLASSMAN engaged in activity protected by the Florida Whistleblower Act between approximately May 2019 and June 2020 was a motivating factor in CARING PEOPLE's "retaliatory personnel action" against GLASSMAN and Defendant's termination of Plaintiff's employment in August 2020, in violation of F.S. §448.102(3).

120.    GLASSMAN has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CARING PEOPLE's violations of F.S. §448.102.

121.    Pursuant to F.S. §448.104, GLASSMAN is entitled to recover from CARING PEOPL her reasonable attorneys' fees and costs as a result of Defendant's violations of Florida's Whistleblower Act.

WHEREFORE, Plaintiff, EILEEN GLASSMAN, demands judgment against Defendant, CP EMPLOYMENT SERVICES COMPANY, INC., d/b/a CARING PEOPLE, for back pay, employment benefits and other compensation including bonuses, compensatory damages, emotional distress, equitable relief, including, but not limited to, reinstatement or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

EILEEN GLASSMAN demands trial by jury on all issues so triable.

Dated: May 26, 2021                    Respectfully submitted,

                              By:   **s/KEITH M. STERN**
                                    Keith M. Stern, Esquire
                                    Florida Bar No. 321000
                                    E-mail:  employlaw@keithstern.com
                                    LAW OFFICE OF KEITH M. STERN, P.A.
                                    80 S.W. 8th Street, Suite 2000
                                    Miami, Florida 33132
                                    Telephone:  (305) 901-1379
                                    Facsimile:  (561) 288-9031
                                    Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA   2100042 | EQUAL OPPORTUNITY |
| | ☒ EEOC   15M-2021-00018  NOV 12  AM 11: 18 | and EEOC |

Florida Commission on Human Relations

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(incl. Area Code)* | Date of Birth |
|---|---|---|
| Eileen Glassman | ▮▮▮▮ | ▮▮ 956 |

| Street Address | City, State and ZIP Code |
|---|---|
| ▮▮▮▮ | ▮▮▮▮ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| CP Employment Service Company, Inc. d/b/a Caring People | 50+ | (561) 860-9200 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4450 Tiffany Drive S. | West Palm Beach, Florida 33407 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                     Latest
                              Aug 4, 2020

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In March 2019, Respondent hired me as a Client Service Manager based upon an annual base salary of $50,000.00 per year. Between approximately March 2019 and February 2020, I successfully carried out my essential job duties for Respondent in its West Palm Beach, Florida office and customers of the company regularly lauded my exemplary job performance.

In or around February 2020, Respondent closed its offices because of the COVID-19 pandemic and all employees started working remotely. In June 2020, after Respondent began reopening its offices, I returned to work in person but learned that COVID-19 safety protocols were not being followed by Respondent in the West Palm Beach office and the company was sending caregivers into customers' homes without appropriate Personal Protective Equipment (PPE) after employees had been exposed to COVID-19. I reported safety complaints in June 2020 to Jaime Cittadino, Respondent's Director of Operations because, inter alia, I believed Respondent was not complying with the company's obligation to provide me and other employees with a safe work environment as mandated by the Occupational Safety and Health Act (OSHA). Ms. Cittadino initially told me that Respondent was going to arrange for me to work in my own office within Respondent's West Palm Beach office. However, while I was not given my own workspace by Respondent, I continued to go into the West Palm Beach office two (2) days per week despite Respondent still not following COVID-19 safety protocols. In June 2020, when I was Sixty-Three (63) years of age, I submitted to Respondent a request for an accommodation because of my disability, Diabetes, based upon my treating physician's documentation, and more specifically requested that Respondent accommodate my disability by allowing me to work from home each day. However, in approximately July 2020, Respondent rejected my accommodation request and Ms. Cittadino told me that I needed to return to the West Palm Beach office every day because, according to Ms. Cittadino: "Its time to rip the band aid off."

Likewise, after I notified Ms. Cittadino in July 2020 that I learned I had been in the presence of an individual who tested positive for COVID-19, as part of which I was told by my doctor to quarantine for fourteen (14) days and take a COVID-19 test, on August 4, 2020, I received a message requesting a meeting with Ms. Cittadino at a Publix supermarket parking lot in Boynton Beach with the PPE that I had

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| Nov 11, 2020   *Eileen Glassman (Nov 11, 2020 12:10 EST)* <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> *(month, day, year)* |

EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION** | Charge Presented To: | Agency(ies) Charge No(s): | |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA | 2100042 | |
| | ☒ EEOC | 15M-2021-00018 | |
| Florida Commission on Human Relations | | | and EEOC |

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

in my possession at home for inventory. Later on August 4, 2020, I met in person with Ms. Cittadino and I was advised that Respondent was purportedly doing a "restructuring" and my employment was therefore being terminated. In this regard, Ms. Cittadino told me on August 4th "how lucky I was" because I could "just retire," despite me being fully capable of continuing to perform my essential duties as a Client Service Manager.

I believe Respondent subjected me to (i) disparate treatment and discrimination because of my age and disability; and (ii) retaliation, all in violation of the Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), and Florida Civil Rights Act (FCRA).

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Nov 11, 2020    *Eileen Glassman (Nov 11, 2020 12:10 EST)* <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# EXHIBIT B

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Eileen Glassman**<br>**c/o Keith M. Stern**<br>**80 SW 8th. Street, Suite 2000**<br>**Miami, FL 33130** | From:  **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **15M-2021-00018** | **Maria E. de Paz**<br>**State & Local Coordinator** | **(786) 648-5826** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Maria E. de Paz*  for                    April14, 2021

**Paul V. Valenti,**                    *(Date Issued)*
**District Director**

cc:

**CP Employment Service Company, INC. d/b/a Caring People**
**c/o Angelo Spinola**
**3424 Peachtree Road NE, Suite 1200**
**Atlanta, GA 30326**

Enclosure with EEOC
Form 161-B (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.